UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ALFRED ESPOSITO,
   *Plaintiff*,

v.

RAUL ALDARONDO, EDGAR GONZALEZ, JOSE SILVA, AND CITY OF NORWALK,
   *Defendants*.

No. 3:22-cv-00621-MPS

**RULING ON MOTION TO DISMISS**

On November 17, 2018, Alfred Esposito was arrested by officers from the Norwalk Police Department — Raul Aldarondo, Edgar Gonzalez, and Jose Silva — after he began taking pictures of them with his cellphone. He now brings suit against these officers and the City of Norwalk, alleging that he was arrested without probable cause in retaliation for exercising his First Amendment rights, arrested with excessive force, and denied medical care after being detained. Esposito further alleges that he was maliciously prosecuted for over three years based on false charges stemming from his arrest. He brings his claims against the individual defendants under 42 U.S.C. § 1983 and Connecticut common law. His claims against the City of Norwalk are brought under 42 U.S.C. § 1983 and Connecticut General Statutes § 52-557n. Defendants argue that most of Esposito's claims are brought outside the applicable statutes of limitations, that these statutes of limitations were not tolled by Governor Lamont's executive order suspending statutes of limitations for Connecticut state law claims, and that, even if these periods were tolled by executive order, Esposito's § 52-557n claims against the City of Norwalk must be dismissed on other grounds. For the reasons set forth below, I grant in part and deny in part the motion to dismiss.

1

I.      FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Esposito's amended complaint, ECF No. 7, and are accepted as true for the purpose of this motion.

At approximately 2:00 a.m. on November 17, 2018, Esposito was in downtown Norwalk, Connecticut. ECF No. 7 ¶ 9. Also in downtown Norwalk at that time were Raul Aldarondo, Jose Silva, and Edgar Gonzalez, *see id.* ¶ 10, 13, officers of the Norwalk Police Department who were on duty that evening, *id.* ¶ 6.[1] Esposito decided to use his cellphone to take pictures of Aldarondo and Silva because he thought they were "flirting with women on the sidewalk while on duty." *Id.* ¶ 10. Silva noticed Esposito and "made his way toward" him, *id.* ¶ 12, accompanied by Aldarondo and Gonzalez, *id.* ¶ 13. Esposito spoke with the three officers, engaging in a tense discussion and cursing. *Id.* ¶ 15-30. As the conversation concluded and the officers were walking away from Esposito, Esposito remarked "too fucking easy." *Id.* ¶ 30. After Esposito made these remarks, Aldarondo "grabbed Mr. Esposito's arm to handcuff him, while defendant Gonzalez wrapped his arm around Mr. Esposito's neck to bring him to the ground." *Id.* ¶ 31. Esposito was not resisting arrest, *id.* ¶ 32, a fact that Silva recognized by telling Gonzalez before Gonzalez used force that Esposito was "not resisting." *Id.* ¶ 33. Esposito cooperated with being handcuffed and the subsequent search of his person. *Id.* ¶ 34. Despite his cooperation, Esposito was injured by Gonzalez's and Aldarondo's use of force, which "herniat[ed] a disc in his cervical spine (neck), aggravat[ed] the lower back injury for which he was on disability, and hyperextend[ed] his knee, causing a Baker's cyst, and inflict[ed] excruciating pain and suffering." *Id.* ¶ 35.

After Esposito was arrested, he was transported to Norwalk Police Headquarters. *Id.* ¶ 36. He "told defendant Aldarondo that he required medical treatment," *id.* ¶ 37, but Aldarondo and

---

[1] I refer to the three officers collectively as "individual defendants." I refer to the three officers and the City of Norwalk collectively as "Defendants."

the other individual defendants "deliberately refused to provide Mr. Esposito with medical attention," *id.* ¶ 39. Esposito was detained for ten hours, and he was not provided any medical attention or treatment during his period of detention. *Id.* ¶ 40.

Aldarondo, Gonzalez, and Silva charged Esposito with "misdemeanor breach of peace in the second degree in violation of Connecticut General Statutes § 53a-181" and "misdemeanor interfering with an officer in violation of Connecticut General Statutes § 53a-167a." *Id.* ¶ 41. Esposito was charged with interfering with an officer on the ground that he failed "to remove his belt while in the holding cell." *Id.* He was arraigned on November 20, 2018. *Id.* ¶ 43. After several years of court proceedings, on April 22, 2022, the prosecution entered a *nolle prosequi* and the Superior Court granted Esposito's motion to dismiss the charges. *Id.* ¶ 46. Before this dismissal, Esposito "was required to attend court in Connecticut, far from his home in New Jersey, on more than two dozen occasions, causing him to miss work and causing lost wages and diminution of earning capacity." *Id.* ¶ 47.

Esposito filed this lawsuit on May 3, 2022, ECF No. 1, and filed an amended complaint on June 2, 2022, ECF No. 7. His complaint contains seven counts. *See* ECF No. 7 ¶¶ 49-83. Counts I (first amendment retaliation), IV (excessive force), V (due process violation denial of medical treatment), and VI (*Monell* municipal liability) are brought under 42 U.S.C. § 1983 and allege various violations of Esposito's constitutional rights. *Id.* ¶¶ 49, 62, 68, 72. Counts II (false arrest) and III (malicious prosecution) are brought under 42 U.S.C. § 1983 and Connecticut common law. *Id.* ¶¶ 56, 59. Count VII (municipal liability) is brought under Connecticut General Statutes § 52-557n. *Id.* ¶ 79. Defendants have moved to dismiss all but Count III, arguing that Counts I, II, IV, V, VI, and VII are barred by the applicable statutes of limitations. ECF No. 14 at 1. Defendants also argue that Count VII is legally insufficient, claiming that the amended

complaint alleges that the individual defendants engaged in acts that constitute actual malice, which prevents the City of Norwalk from being liable for their conduct under CGS § 52-557n. ECF No. 14 at 7.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss. *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

## III.    DISCUSSION

Most of Defendants' arguments involve statutes of limitations. "Although the statute of limitations is an affirmative defense that usually may not be raised in a pre-answer motion, if the running of the statute is apparent from the face of the complaint, the defense may properly be raised under Rule 12(b)(6)." *Galea v. L. Offices of Cary Alan Cliff*, 3:19-CV-225 (SRU), 2021 WL 1090783, at *7 (D. Conn. Mar. 22, 2021) (citations and internal quotation marks omitted). Here, no one disputes that, based on the allegations in the amended complaint, Esposito was

arrested in 2018 and that the amended complaint was not filed until 2022, and so the defense is properly raised in Defendants' motion to dismiss.

### A.      Counts I, II, IV, V, VI: Executive Order 7G

Defendants argue that I should dismiss Counts I, II, IV, V, and VI because "said claims are time barred by the applicable [s]tatute of [l]imitations," ECF No. 14 at 1, and this statute of limitations was not tolled by an executive order issued by Governor Lamont at the outset of the COVID-19 pandemic, Executive Order 7G ("Order 7G"), *id.* at 10-11. I disagree and find that Order 7G did toll the statute of limitations applicable to § 1983 actions. So Counts I, II, IV, V, and VI are timely.

Because 42 U.S.C § 1983 has no federal statute of limitations, federal courts "borrow the 'most analogous' state statute of limitations." *Connelly v. Komm*, 3:20CV1060 (JCH), 2021 WL 5359738, at *3 (D. Conn. Nov. 16, 2021) (citing *Board of Regents v. Tomanio*, 446 U.S. 478, 488 (1980)). Neither party disputes that "[t]he statute of limitations for claims in Connecticut under section 1983, which courts borrow from Connecticut's personal injury statute, is three years." *Id.*; *see* Conn. Gen. Stat. § 52-577 (three-year statute of limitations for personal injury actions). Courts also borrow state "tolling rules" in § 1983 cases, which means that "both statutory and common law rules" related to tolling a statute of limitations apply to § 1983 causes of action. *Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002). Counts I, II, IV, V, and VI all assert § 1983 claims arising from events that occurred on November 17, 2018. Esposito filed this lawsuit on May 3, 2022. These claims are thus untimely unless the applicable statute of limitations was tolled by a state tolling rule.

Order 7G was promulgated on March 19, 2020, as part of "a series of executive orders" issued "to contain and mitigate the spread of COVID-19." *Taylor v. Pillai*,

3:21CV00623(SALM), 2022 WL 4080525, at *2-3 (D. Conn. Sept. 6, 2022) (citing *Casey v. Lamont*, 258 A.3d 647, 652 (Conn. 2021)). Order 7G provides in relevant part:

> **Suspension of Non-Critical Court Operations and Associated Requirements.** Notwithstanding any provision of the Connecticut Statutes or of any regulation, local rule or other provision of law, I hereby suspend, for the duration of this public health and civil preparedness emergency, unless earlier modified or terminated by me, all statutory (1) location or venue requirements; (2) time requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings; and (3) all time requirements or deadlines related to the Supreme, Appellate and Superior courts or their judicial officials to issue notices, hold court, hear matters and/or render decisions including, but not limited to, the following:
> . . .
> e. All statutes of limitations provided in Chapter 926 of the General Statutes[.]

Executive Order 7G ¶ 2 (March 19, 2020).[2] Section 52-577, the statute of limitations at issue, appears in Chapter 926 of the General Statutes. *See* Conn. Gen. Stat. §§ 52-575–52-598a. Order 7G's provisions regarding "all statutory requirements, statutes of limitation or other limitations or deadlines relating to service of process, court proceedings or court filings in civil matters" were later modified to expire on March 1, 2021. Executive Order 10A ¶ 5 (February 8, 2021).[3] Order 7G's suspension of statutes of limitations was thus in effect from March 19, 2020, to March 1, 2021.

Relying on cases from New York, Defendants argue that that the word "suspend" as used in Order 7G is meaningfully distinct from the word "toll" and that Order 7G's suspension of the applicable statute of limitations does not help the plaintiff here. ECF No. 14 at 10-11. But both

---

[2] Available at https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-7G.pdf. I take judicial notice of Governor Lamont's executive orders, which are published on the State of Connecticut's official online portal. *See* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *accord Taylor v. Pillai*, 3:21CV00623(SALM), 2022 WL 4080525, at *3 (D. Conn. Sept. 6, 2022); *Connelly v. Komm*, No. 3:20CV01060(JCH), 2021 WL 5359738, at *3 n.3 (D. Conn. Nov. 16, 2021).
[3] Available at https://portal.ct.gov/-/media/Office-of-the-Governor/Executive-Orders/Lamont-Executive-Orders/Executive-Order-No-10A.pdf.

federal law and Connecticut law recognize that "toll" and "suspend" are synonyms in the statutes of limitations context. *Artis v. D.C.*, 138 S. Ct. 594, 601-02 (2018) ("Our decisions employ the terms 'toll' and 'suspend' interchangeably."); *State v. Ali*, 660 A.2d 337, 342 n.8 (Conn. 1995) ("the traditional meaning of the term 'toll' within the parlance of statutes of limitations[] [is] namely as a synonym for 'suspend'") (internal quotation marks and citation omitted). And Defendants do not cite a single case from Connecticut in support of their argument that Order 7G did not toll the statute of limitations, likely because there is a "unanimous line of decisions" in Connecticut from both federal district courts and state courts holding "that Executive Order 7G served to 'interrupt' or 'pause' any statute of limitations that would have otherwise been running during the applicable period." *Taylor*, 2022 WL 4080525, at *4 (collecting state cases and holding that Order 7G acted to pause the statute of limitations period, which resumed when Order 7G expired); *see Khan v. Yale Univ.*, 27 F.4th 805, 818 (2d Cir. 2022) (when state appellate courts have not addressed the issue, federal court "must endeavor, in the first instance, to predict how" the Connecticut Supreme Court would decide the issue and can consider "relevant decisions of the state's lower courts") (citations and internal quotation marks omitted). At least two of my colleagues on this Court have considered Order 7G in relation to § 1983 claims and held that Order 7G was a state tolling rule that "properly tolled § 52-577 as applied to § 1983 claims." *Santana v. Quiros*, 3:21-CV-376 (SVN), 2022 WL 16706959, at *6 (D. Conn. Nov. 4, 2022); *accord Connelly*, 2021 WL 5359738, at *4-5 (Order 7G "tolls [the plaintiff's] claims under section 1983" and "served as a state 'tolling rule'"). I agree that Order 7G tolled the applicable statute of limitations on March 19, 2020, and that the paused statutory periods "resumed from the point where they had been paused" when Governor Lamont's suspension expired. *Taylor*, 2022 WL 4080525, at *4 (citation and internal quotation marks omitted).

Here, Defendants challenge claims that all accrued on the day that Esposito was arrested: November 17, 2018.[4] *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) ("the standard rule" is that accrual occurs "when the plaintiff has a complete and present cause of action," usually as soon as he is subjected to the harm in question, and the "statute of limitations would normally commence to run from that date;" for false imprisonment, "[l]imitations begin to run . . . when the alleged false imprisonment ends") (citations and internal quotation marks omitted). Esposito had three years — 1,096 days — from November 17, 2018, to bring Counts I, II, IV, V, and VI against Defendants. When the statute of limitations was paused on March 19, 2020, Esposito had waited 488 days and so had 608 days left in which to file these causes of action. When the statute of limitations resumed running on March 1, 2021, the new applicable limitations date thus became October 30, 2022. Esposito brought his claims against Defendants on May 3, 2022 and filed an amended complaint on June 2, 2022. His claims are thus timely under state tolling rules.

Federal courts borrow state tolling rules "unless applying the state's tolling rules would defeat the goals of the federal statute at issue." *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation and internal quotation marks omitted). Two of the principal policies embodied in § 1983 are "deterrence and compensation." *Bd. of Regents of U. of State of N. Y. v. Tomanio*, 446 U.S. 478, 488 (1980). In particular, § 1983 is intended to prevent "abuses of power by those acting under color of state law" and compensate "persons injured by deprivation of federal rights." *Robertson v. Wegmann*, 436 U.S. 584, 591 (1978). Considering the impact of tolling on federalism is also "quite appropriate in adjudicating federal suits based on 42 U.S.C. § 1983." *Tomanio*, 446 U.S. at 492 (noting that "the application of the New York law of tolling is in fact more consistent with the policies of 'federalism' . . . than a rule which displaces the state

---

[4] Defendants do not argue that the malicious prosecution claim, which does not accrue until the underlying prosecution is favorably terminated, is time barred. *See* ECF No. 14 at 9.

rule in favor of an ad hoc federal rule"). Here, borrowing the state tolling rule from Order 7G "bolsters the policy aims" of § 1983, furthering "the goal of deterring abuses of power by state officials" by requiring Defendants "to answer for the alleged rights violations" and granting Esposito his "day in court to seek compensation for [his] alleged constitutional deprivation." *Connelly v. Komm*, 2021 WL 5359738, at *4 (denying motion to dismiss § 1983 claims for lack of timeliness because of Order 7G's tolling effect). Borrowing Order 7G's tolling also furthers principles of federalism by ensuring that the interpretation of Order 7G is uniform between state and federal courts in Connecticut. A contrary decision would substitute an ad hoc federal rule for the state rule that has been consistently applied by state courts to date.[5] Borrowing Order 7G's tolling rule thus furthers the goals of § 1983.

Defendants offer several policy arguments to support their contention that Order 7G should not toll the statute of limitations applicable to Esposito's claim. First, they argue that during the period tolled by Order 7G, Connecticut federal courts "remained wide open for business" while state courts "shutter[ed] their doors," suggesting that Plaintiff *could* have litigated the challenged causes of action in federal court and so there is no reason to toll the statute of limitations. ECF No. 14 at 15. This argument misses the mark. I must borrow a state tolling rule unless doing so would "defeat the goals of the federal statute at issue," *Pearl*, 296 F.3d at 80 (citation and internal quotation marks omitted); this inquiry does not ask me to consider whether the rationale for a state tolling rule applies with equal force to the federal courts. Defendants then argue that declining to borrow the state tolling rule would not defeat the goals of § 1983, ECF No. 14 at 12, but this argument inverts the applicable legal standard. I

---

[5] It would also have the perverse effect of encouraging plaintiffs to file federal claims in state court, rather than federal court, oddly relegating the federal court to a back seat in interpreting federal law.

apply the state tolling rule *unless* doing so defeats the goals of § 1983; the effect of declining to apply the state rule on the federal statutory goals is not part of that legal standard.

Defendants also contend that allowing Esposito to press his claims would frustrate the policy considerations behind "strictly enforcing a [s]tatute of [l]imitations," *id.* at 14, that I should consider Esposito's delay "in pressing his claim" as a factor weighing against tolling, *id.* at 15, and that declining to toll the statute of limitations will not prejudice Esposito, ECF No. 20 at 3-5. These policy arguments ignore that I am not deciding whether to toll the statute of limitations — the state of Connecticut did that in Order 7G. Instead, I must determine only whether applying the state tolling rule to Esposito's claims frustrates the goals of § 1983; as discussed, it does not.

In support of their policy arguments, Defendants cite several cases where federal courts considered policy factors when determining whether to toll a state statute of limitations that would otherwise bar a federal claim. *See, e.g., Johnson v. Ry. Exp. Agency, Inc.*, 421 U.S. 454, 465 (1975) (in employment discrimination case involving claims under both 42 U.S.C. § 1981 and Title VII, state statute of limitations barred Section 1981 claim and petitioner asked court not to apply it because failure to toll would "conflict seriously with the broad . . . purposes of Title VII;" court declined to toll); *Meyer v. Frank*, 550 F.2d 726, 729-30 (2d Cir. 1977) (state statute of limitations barred § 1983 claim and appellant asked court to toll the state limitations period based on federalism concerns; court declined to toll); *Williams v. Walsh*, 558 F.2d 667, 674-76 (2d Cir. 1977) (court declined to toll because as in *Meyer* "tolling was not needed to protect the remedial policy underlying the . . . § 1983 claim" and other policy factors counseled against tolling). These cases do not help the Defendants here. Each case involved a determination whether applying a state statute of limitations or state tolling rule would frustrate federal policy

aims, and each concluded that it would not. I have applied the same analysis here, finding, like these courts, that application of the state rule does not undermine the policies of the relevant federal law. The *Johnson* court wrote that when "borrowing a state period of limitation for application to a federal cause of action, a federal court is relying on the State's wisdom in setting a limit, and exceptions thereto, on the prosecution of a closely analogous claim." *Johnson*, 421 U.S. at 464. Order 7G creates an exception to the applicable statute of limitations, and none of the cases cited by Defendants suggest I should decline to apply it. Because Order 7G tolls the applicable statute of limitations for Counts I, II, IV, V, and VI, I deny Defendants' motion to dismiss them for lack of timeliness.

### B. Count VII: Connecticut General Statutes § 52-557n

#### 1. Statute of Limitations

Defendants move to dismiss the negligence claim under Conn. Gen. Stat. § 57-557 against the City of Norwalk in Count VII on the ground that Esposito brought it outside of the applicable statute of limitations; Defendants argue that this claim, which is subject to a two-year statute of limitations, is untimely even if I apply the tolling rule in Order 7G. I agree that certain portions of Count VII related to alleged negligence that occurred during Esposito's arrest and detention — those related to excessive force and denial of medical care during detention — are untimely. The portions related to false arrest and malicious prosecution, however, are timely.

"[A] negligence claim under [§ 52-557n] is governed by a two year statute of limitations." *Birch v. Town of New Milford*, 3:20-CV-1790 (VAB), 2021 WL 4932405, at *24 (D. Conn. Sept. 24, 2021) (citations omitted, collecting cases) (second alteration in original); *accord 25 Grant St., LLC v. City of Bridgeport*, 237 A.3d 767, 778 n.16 (Conn. App. 2020) (applying two-year statute of limitations from § 52-584 to action brought under § 52-557n). Even

accounting for the tolling effect of Order 7G, Esposito's two-year limitations period for any § 52-557n claim accruing on the date of his arrest would have ended in 2021.

Esposito argues, however, that under Connecticut decisional law "if a prior action prevents enforcement of a remedy sought in a later action, the pendency of the prior action can toll the statute of limitations for a later filed action." ECF No. 16 at 1 (citing *Garcia v. U.S.*, CIV 07CV322 (WWE), 2008 WL 4298319, at *2 (D. Conn. Sept. 16, 2008)). Connecticut courts have applied this doctrine to tort actions, writing that a "tort case is not ripe for adjudication if resolution of an unresolved underlying case is necessary for reliable adjudication." *Taylor v. Wallace*, 194 A.3d 343, 349 (Conn. App. 2018). And a tort case cannot be reliably adjudicated where there exists an underlying case "prevent[ing] enforcement of the remedy sought in the later action." *Fontanella v. Marcucci*, 877 A.2d 828, 834 (Conn. App. 2005). In those cases, "the pendency of the prior action can toll the statute of limitations in the later action." *Id.* (holding that the statute of limitations on legal malpractice claims was tolled until the underlying case in which the malpractice allegedly occurred concluded because only at that point would damages be definite). This doctrine focuses on whether the remedy sought in the tort suit could not be awarded until the underlying case concluded because "the viability of the [tort claim] was contingent on the outcome of the underlying . . . case." *Id.*; *see Birch v. Town of New Milford*, 3:20-CV-1790 (VAB), 2021 WL 4932405, at *24 (D. Conn. Sept. 24, 2021) (declining to dismiss § 52-557n claim arising from alleged negligent investigation and failure to disclose evidence by police officers; statute of limitations was tolled because defendant could not assert negligent investigation until his conviction was overturned).

Esposito argues that his tort claims against the City of Norwalk under § 52-557n were tolled by this state decisional rule "until his pending criminal case was dismissed . . . on April 22,

12

2022" because the "negligent actions and omissions of the defendants caused his malicious prosecution" and some of his damages, but he could not bring any negligence claims until the underlying criminal case terminated in his favor. ECF No. 16 at 2. Esposito brings his § 52-557n claims against the City of Norwalk in a single count of the amended complaint, alleging that all the "negligent acts," ECF No. 7 ¶ 81, of the individual defendants caused his "unlawful injuries," *id.* ¶ 82, and that the City is liable for the resulting damages, *id.* ¶ 83. For Esposito to establish municipal liability for these damages, he must prove that the damages were "caused by" the individual defendants' negligent acts while "acting within the scope of [their] employment or official duties." CGS § 52-557n(a)(1)(A); *Tyson v. Willauer*, 290 F. Supp. 2d 278, 288–89 (D. Conn. 2003) ("any liability under this section i[s] predicated on a prior finding of negligence by" the individual defendants). So whether Esposito's § 52-557n tort claim is timely turns on when each negligent act occurred and whether the pendency of his criminal case made a tort remedy unavailable for each of the allegedly negligent acts.

  I find that the unavailability of a tort remedy during the pendency of the criminal case tolls the statute of limitations for some, but not all, of Esposito's § 52-557n negligence claim. Specifically, the statute of limitations for Esposito's § 52-557n claim arising from the individual defendants' allegedly negligent decisions to arrest and prosecute him was tolled while the underlying criminal case was pending. Claims sounding in malicious prosecution and false arrest claims are contingent on the termination of the underlying criminal proceedings in the plaintiff's favor. *See Spak v. Phillips*, 857 F.3d at 461 n.1 (citation omitted) (Connecticut state law and § 1983 malicious prosecution claims require that "criminal proceedings have terminated in favor of the plaintiff"); *Miles v. City of Hartford*, 445 F. App'x 379, 383 (2d Cir. 2011) (summary order) (citing *Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d. Cir 1992)) (noting favorable termination is

an element of a claim "sounding in false imprisonment or false arrest" under Connecticut law). Until Esposito's criminal case was dismissed in April 2022, then, he could not establish individual liability for the alleged arrest and prosecution without probable cause and so the underlying criminal case prevented him from seeking a remedy from all Defendants, including the City. Had he tried to bring these claims, they would likely have been dismissed because resolving them in Esposito's favor, i.e. by finding that the officers negligently arrested and charged him without probable cause, could have interfered with the resolution of his ongoing criminal case. *See Taylor v. Wallace*, 194 A.3d 343, 348 (Conn. App. 2018) ("We agree with the policy enunciated in *Heck*: if success in a tort action would necessarily imply the invalidity of a conviction, the action is to be dismissed unless the underlying conviction has been invalidated.").

But several of the bases for Esposito's negligence claim do not require that the related criminal proceedings have terminated in his favor. Esposito alleges that the individual defendants negligently used excessive force during his arrest and denied him medical care while he was detained. *See* ECF No. 7 ¶ 79 (incorporating all prior factual allegations in § 52-557n claim). Connecticut permits state law negligence claims against police officers for these kinds of acts. *See Bussolari v. City of Hartford*, 3:14-CV-00149 (JAM), 2016 WL 4272419, at *3 (D. Conn. Aug. 12, 2016) ("Connecticut law allows for claims of negligence against police officers, including for negligent arrest and use of force," and "courts have allowed for recovery under Connecticut's negligence-based municipal liability statute, Conn. Gen. Stat. § 52-5[5]7n, in cases involving allegations of excessive force by police officers.") (citations and internal quotation marks omitted); *Macellaio v. Newington Police Dept.*, 75 A.3d 78, 83 (Conn. App. 2013) (applying statute of limitations for negligence to claims of negligent arrest). These claims do not require that any related criminal case terminate favorably. *See Jagger v. Mohawk Mt. Ski Area,*

14

*Inc.*, 849 A.2d 813, 823 n.13 (Conn. 2004) (citation and internal quotation marks omitted) ("The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury."). And these claims are not entangled with Esposito's criminal case, where he was charged with breach of the peace and with interfering with an officer "for allegedly failing to remove his belt while in the holding cell." ECF No. 7 ¶ 41. Esposito's claims arising from the allegedly negligent use of force during his arrest and for negligent denial of medical care while he was detained could thus have been reliably adjudicated, and a remedy awarded, as soon as the events occurred. Accordingly, the statute of limitations for those portions of the § 52-557n claim against the City was not tolled by the state decisional rule Esposito cites. They thus are time barred by the applicable two-year statute of limitations.

I therefore decline to dismiss Count VII's § 52-557n claim against the City for damages resulting from Esposito's false arrest and malicious prosecution, including "lost compensation, lost wages, damages to reputation, emotional distress, and other harms and damages" caused by his arrest and prosecution. ECF No. 16 at 2. I dismiss all other aspects of the § 52-557n claim in Count VII.

### 2. Actual Malice

Defendants also move to dismiss Count VII on substantive grounds, arguing that Esposito's allegation that Defendants' acts "lacked probable cause and were malicious" brings Count VII within the exemption in § 52-557n for malicious acts. ECF No. 14 at 7. A municipality is not liable for damages under § 52-557n when those damages arise from "[a]cts or omissions . . . which constitute . . . criminal conduct, fraud, actual malice or wilful misconduct." Conn. Gen. Stat. § 52-557n(a)(2)(A). Defendants cite this statutory provision and perfunctorily argue that Esposito has "attempted to assert claims involving 'malice or wilful misconduct'

15

pursuant to CGS Sec. 52-557n" because Esposito alleges that Defendants' actions are "malicious" and "constitut[e] 'malicious negligence.'" ECF No. 14 at 7. As Esposito suggests, however, it is not clear that "malice" as a component of an action for malicious prosecution, which may be "inferred from lack of probable cause," *Falls Church Group Ltd. v. Tyler, Cooper and Alcorn, LLP,* 281 Conn. 84, 94 (2007), means "actual malice" as set forth in § 52-557n(a)(2)(A). And Defendants cite no authority other than the statute to support their argument that Esposito's factual allegations amount to "malice or wilful misconduct" or that merely describing Defendants' acts as malicious triggers the statutory exception. Nor did Defendants reply to Esposito's argument that there is a distinction between malice in the context of a claim for malicious prosecution and the statutory exemption in § 52-557n for acts constituting actual malice or wilful misconduct. ECF No. 16 at 2-3 (Esposito's argument to which Defendants did not file any reply). Because Defendants have not even attempted to show Esposito's position is wrong or otherwise adequately briefed the issue, I decline to dismiss Count VII on these grounds.

### IV.   CONCLUSION

For the reasons above, I deny the motion to dismiss (ECF No. 14) regarding Counts I, II, IV, V, and VI. I grant the motion to dismiss regarding the portions of Count VII related to excessive force and denial of medical care, but deny it with respect to the portions arising from Esposito's false arrest and malicious prosecution.

IT IS SO ORDERED.

/s/
Michael P. Shea, U.S.D.J.

Dated:  Hartford, Connecticut
        February 24, 2023